1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                        NORTHERN DISTRICT OF CALIFORNIA
10                           SAN FRANCISCO DIVISION
11

12   RENO FLYING SERVICES, INC., and        Case No. 13-cv-04346 NC
     AMERICAN MEDFLIGHT, INC.,
13                                           **ORDER GRANTING PIPER'S**
                      Plaintiffs,            **MOTION FOR SUMMARY**
14                                           **JUDGMENT**
             v.
15                                           Re: Dkt. No. 22
     PIPER AIRCRAFT, INC., and DOES 1-50,
16   Inclusive,

17                    Defendants.

18   _____
     PIPER AIRCRAFT, INC.,
19
                      Cross-Complainant,
20
             v.
21
     RENO FLYING SERVICES, INC.,
22   AMERICAN MEDFLIGHT, INC., and
     ROES 1-50, Inclusive,
23
                      Cross-Defendants.
24
25
26
27
28
     Case No. 13-cv-04346 NC
     ORDER GRANTING PIPER'S MOTION
     FOR SUMMARY JUDGMENT

1    This case arises out of an allegedly defective gear on an aircraft, which collapsed,

2    causing damage to the aircraft.  The owner of the aircraft, American Medflight, and the

3    company which maintained the aircraft, Reno Flying Services, filed this action against the

4    manufacturer of the defective part, Piper Aircraft, seeking damages for economic losses.

5    Piper now moves for summary judgment as to plaintiffs' claims for negligence, strict

6    product liability, and breach of express and implied warranties.  Because the Court finds

7    that Florida law applies to this action, and that Florida's economic loss doctrine bars

8    plaintiffs' negligence and strict liability claims, the Court GRANTS Piper's motion for

9    summary judgment as to these claims.  Further, because the Court finds a lack of privity

10   between plaintiffs and Piper, and that plaintiffs provided no evidence that they complied

11   with the terms of Piper's express warranty, the Court GRANTS Piper's motion for

12   summary judgment with respect to plaintiffs' breach of express and implied warranty

13   claims.

## I. BACKGROUND

15   This case involves a 1979 Piper PA-31 "Cheyenne" aircraft.  Dkt. No. 1 at 10-11, ¶¶

16   8-9.[1]  Reno installed a landing gear link assembly and locking pin on the aircraft on April

17   15, 2008.  *Id.* at 10-11, ¶ 8.  Both plaintiffs are Nevada corporations.  *Id.* at 9, ¶¶ 1, 2.

18   Piper's headquarters, principal place of business, and manufacturing facilities are located in

19   Florida.  Dkt. No. 23 at 36, ¶ 3.  The parts at issue were manufactured by Piper also in

20   Florida.  *Id.*, ¶¶ 3-5.  Plaintiffs purchased the parts from Columbia Air Services, which

21   purchased them from Piper.  Dkt. No. 1 at 10-11, ¶ 4, 8; Dkt. No. 23 at 36, ¶ 4.  On May 6,

22   2011, while landing at the Oakland Airport in California, the left landing gear assembly and

23   its component parts failed and collapsed, causing the aircraft to impact the runway.  Dkt.

---

[1] In support of its motion for summary judgment, Piper cites to plaintiffs' complaint for facts of
which it does not have personal knowledge.  The cited allegations are "judicial admissions," which
are defined as "formal admissions in the pleadings which have the effect of withdrawing a fact from
issue and dispensing wholly with the need for proof of the fact."  *American Title Ins. Co. v.
Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988).  "A statement in a complaint . . . is a judicial
admission."  *Id.*  "Factual assertions in pleadings . . . are considered judicial admissions
conclusively binding on the party who made them."  *Id.*

Case No. 13-cv-04346 NC
ORDER GRANTING PIPER'S MOTION                    2
FOR SUMMARY JUDGMENT

1 | No. 1 at 11, ¶ 9.

2 |      Plaintiffs filed this action against Piper and Columbia on July 12, 2013, in the

3 | Superior Court of the State of California, County of Alameda. Dkt. No. 1. On September

4 | 17, 2013, Columbia was dismissed from this action. *Id.* at 45. Piper removed the action to

5 | this Court on September 19, 2013. *Id.* at 3. This Court has subject matter jurisdiction

6 | under 28 U.S.C. § 1332(a)(1) because plaintiffs are seeking damages in excess of $325,000,

7 | and both plaintiffs are of diverse citizenship to Piper. *Id.* at 11-12, ¶ 16; *Id.* at 2, ¶ 5. All

8 | parties consented to the jurisdiction of a magistrate judge. Dkt. No. 14 at 6:9-14. Piper

9 | now moves for summary judgment with respect to all of plaintiffs' claims. Dkt. No. 22.

## II. LEGAL STANDARD

11 |      Summary judgment may be granted only when, drawing all inferences and resolving

12 | all doubts in favor of the nonmoving party, there are no genuine issues of material fact and

13 | the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex*

14 | *Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing

15 | substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*,

16 | 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is

17 | such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald

18 | assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*,

19 | 477 F.3d 652, 658 (9th Cir. 2007).

20 |      The moving party bears the burden of identifying those portions of the pleadings,

21 | discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.

22 | *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving

23 | party must go beyond the pleadings and, by its own affidavits or discovery, set forth

24 | specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c);

25 | *Ruffin v. Cnty. of L.A.*, 607 F.2d 1276, 1280 (9th Cir. 1979). All reasonable inferences,

26 | however, must be drawn in the light most favorable to the nonmoving party. *Olsen v.*

27 | *Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

28 | //

# III. DISCUSSION

**A.    Plaintiffs' Tort Claims Are Barred by the Economic Loss Doctrine.**

Piper contends that either Florida or Nevada law applies to this action, and under Florida or Nevada law, plaintiffs' claims for negligence and strict product liability are barred by the economic loss doctrine. Dkt. No. 23 at 13-14, 21.  In response, plaintiffs argue that California, not Florida or Nevada law applies.  Dkt. No. 28 at 8-14. Additionally, plaintiffs contend that their negligence and strict product liability claims are not barred under either California or Florida law.  *Id.* at 8-14, 17.

"In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits."  *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000).  Thus, the Court will apply California's choice-of-law analysis.  California applies a three-step "governmental interest" analysis to choice-of-law questions.  *Id.*  First, the Court must examine the law of each jurisdiction and determine whether the laws differ as to the relevant transactions.  *Id.*  Second, if the laws differ, the Court must determine whether there is a "true conflict," where each of the relevant jurisdictions has an interest in applying its law.  *Id.*  "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied."  *Id.* (quoting *McGhee v. Arabian American Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989)).  If more than one jurisdiction has a legitimate interest, the Court must move to the third step in the analysis, which focuses on the "comparative impairment" of the jurisdictions.  *Id.*  The Court must identify and apply the law of the jurisdiction whose interest would be more impaired if its law were not applied.  *Id.*; *Nat'l Union Fire Ins. Co. of Pittsburgh v. Dassault Falcon Jet Corp.*, 263 F. App'x 604, 606 (9th Cir. 2008).

### 1.    Florida and Nevada Laws Differ From California Law With Respect to the Economic Loss Rule.

Plaintiffs allege claims in negligence and strict liability, seeking purely economic damages, limited to recovery for damage to the aircraft. Dkt. No. 1 at 10-13, ¶¶ 8-26.  The economic loss rule "bars tort recovery for economic damages caused by a defective product

unless those losses are accompanied by personal injury or damage to property other than the defective product itself." *Dassault*, 263 F. App'x at 606.  While all three states employ some form of the economic loss rule, each state would apply it differently in this case.

### a. Under Nevada or Florida Law, Plaintiffs' Tort Claims Would Be Barred as a Matter of Law.

Under Nevada law, "a plaintiff may not recover economic loss under theories of strict products liability or negligence." *Cent. Bit Supply, Inc. v. Waldrop Drilling & Pump, Inc.*, 102 Nev. 139, 140-41 (1986).  The Nevada Supreme Court has held that a defective engine that damaged other parts of an aircraft did not damage "other property," and that claims based on such damage were barred by the economic loss rule. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Pratt & Whitney Canada, Inc.*, 107 Nev. 535, 539 (1991).  "[W]hen an integral component of a product . . . fails and damages the larger product, only economic loss occurs and, thus, tort recovery is barred." *Fireman's Fund Ins. Co. v. Sloan Valve Co.*, No. 10-cv-01816, 2011 WL 5598324 at *2 (D. Nev. Nov. 16, 2011).  This includes components that are later installed as replacement parts into a larger product. *See Progressive Ins. Co. v. Sacramento Cnty. Coach Showcase*, No. 207-cv-01087, 2008 WL 5377993 at *1, 7 (D. Nev. Dec. 23, 2008) (replacement battery equalizer installed in RV that damaged other parts of the RV was an integral component rather than other property, and tort claims were barred for damage to the RV itself).  Accordingly, plaintiffs' tort claims here would be barred under Nevada law.  Plaintiffs do not contend otherwise.

Similarly, under Florida law, the economic loss rule states that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself." *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 100 So. 3d 399, 404-05 (Fla. 2013) (quoting *Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So. 2d 899, 901 (Fla. 1987)).  Florida law "limit[s] tort liability with respect to defective products to injury caused to persons or damage caused to property other than the defective product itself." *Id.* at 408 (quoting *Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532, 541 (Fla.

2004)).  A component part that damages the product that it has been integrated into does not damage "other property," and tort claims where a component part allegedly damaged the product of which it is a part, can be dismissed under the economic loss rule.  *See Casa Clara Condominium Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1247 (Fla. 1993); *Jarmco, Inc. v. Polygard, Inc.*, 668 So. 2d 300, 303 (Fla. Dist. Ct. App. 1996) *aff'd*, 684 So. 2d 732 (Fla. 1996) (holding that the "other property" exception to the economic loss rule "must be limited to property that is unrelated to the product sold"); *Tyco Safety Products Canada, Ltd. v. Abracon Corp.*, No. 08-cv-80604, 2008 WL 4753728 at *4 (S.D. Fla. Oct. 28, 2008).  "Florida law does not consider property that the defective product is integrated into to be other property."  *Premix-Marblelite Mfg. Corp. v. SKW Chemicals, Inc.*, 145 F. Supp. 2d 1348, 1359 (S.D. Fla. 2001).

Furthermore, the Florida District Court of Appeal has held that an engine is not "other property" from a replacement oil pump in the engine, which malfunctioned and damaged other parts of the engine.  *Am. Universal Ins. Grp. v. Gen. Motors Corp.*, 578 So. 2d 451, 451-52 (Fla. Dist. Ct. App. 1991).  The court disagreed with the notion "that a distinction can be made based upon the fact that it was the replacement oil pump which malfunctioned rather than the oil pump originally placed in the engine by General Motors" and found that the replacement oil pump "became an integral part of the repaired engine."  *Id.* at 453-54.  The court concluded that "the oil pump was an integral or component part of the engine manufactured by General Motors and thus the damage to the engine caused by this component part was not damage to separate property," barring the plaintiff's tort recovery.  *Id.*

Plaintiffs attempt to distinguish *Gen. Motors* from this case, arguing that in *Gen. Motors*, the only damage was to the repaired engine, while here, there was damage to the whole aircraft, including the fuselage, doors, and propellers.  Dkt. No. 28 at 10.  Plaintiffs further argue that the application of the economic loss doctrine under Florida law has not previously been extended to damage to a product when a defective component of a replacement part destroys both the replacement part and the product.  *Id.* at 9.  In support of

this contention, plaintiffs rely primarily on a 2003 case involving a failed landing gear mechanism, where the Eleventh Circuit certified for appeal the question of whether the economic loss rule applies to damage to the total aircraft or only to damage to the landing gear under the "other property" exception. *Id.* (citing *Indem. Ins. Co. v. Am. Aviation, Inc.*, 344 F.3d 1136, 1143 (11th Cir. 2003)). However, the Florida Supreme Court did not address this issue, deciding the case on other grounds. *See Indemnity*, 891 So. 2d at 543.

Furthermore, in a case where a plaintiff attempted to recover damages as a result of damage to a helicopter caused by an allegedly defective component installed in the helicopter's engine, the Florida District Court of Appeal held that the helicopter's "airframe and engine are not two separate pieces of property-they are one product." *Turbomeca, S.A. v. French Aircraft Agency, Inc.*, 913 So. 2d 714, 717 (Fla. Dist. Ct. App. 2005). The *Turbomeca* court held that the economic loss doctrine barred the plaintiff's tort claims. *Id.* at 716. At the hearing, plaintiffs argued that *Turbomeca* dealt with a claim against the manufacturer due to an alleged defect on a part installed by a previous owner, rather than the current owner, as is the case here. *See id.* at 715. However, the *Turbomeca* court did not base its holding on this distinction, but rather, on "well-reasoned precedents" where "[c]ourts have refused to bifurcate products into parts where a component part harms or destroys the finished product." *Id.* at 717. The Court is not convinced by plaintiffs' argument that the economic loss rule would bar recovery for claims where a part was replaced by a previous owner, but not by a current owner.

The Court finds that under either Florida or Nevada law, the economic loss rule would bar plaintiffs' tort claims here.

> **b. Under California Law, Plaintiffs' Tort Claims Would Be Barred Only if It Is Not Reasonable to Expect That the Failure of the Component Part Will Damage Other Portions of the Finished Product.**

Under California law, the economic loss rule "does not necessarily bar recovery in tort for damage that a defective product . . . causes to other portions of a larger product . . . into which the former has been incorporated." *Dassault*, 263 F. App'x at 606 (quoting

Case No. 13-cv-04346 NC
ORDER GRANTING PIPER'S MOTION       7
FOR SUMMARY JUDGMENT

1   *Jimenez v. Super. Ct.*, 29 Cal. 4th 473, 493 (2002)). "Tort recovery is not barred if 'the

2   defective part is a sufficiently discrete element of the larger product that it is not reasonable

3   to expect its failure invariably to damage other portions of the finished product.'" *Id.*

4   (quoting *KB Home v. Super. Ct.*, 112 Cal. App. 4th 1076, 1087 (2003)). "Resolution of this

5   issue . . . should be left to the trier of fact." *KB Home*, 112 Cal. App. 4th at 1087.

6         Piper acknowledges that under California law, it may be liable for negligence or strict

7   liability if a jury found that the landing gear component constituted separate property from

8   the aircraft under the inevitable damage test. Dkt. No. 23 at 18. For purposes of choice-of-

9   law analysis, the inevitable damage test is different from laws in states where tort recovery,

10   in cases where a component damages a larger product, is barred as a matter of law. *See*

11   *Dassault*, 263 F. App'x at 607. Because Florida and Nevada laws differ from California

12   law with respect to the application of the economic loss rule, the Court moves to the second

13   step of the choice-of-law analysis.

14        **2.**    **Florida, Nevada, and California Have a Legitimate Interest in Applying**
15                **Their Laws to the Present Action.**

16         The Court must now determine whether more than one of the relevant jurisdictions

17   has a legitimate interest in applying its law.

18         Florida is the home of Piper, which is where the product in question was

19   manufactured. Dkt. No. 23 at 36, ¶¶ 3-5. The home state of the defendant, and the state

20   where the product was manufactured "has a strong interest in applying its law to [a lawsuit]

21   in order to limit the . . . defendant's liability for economic losses." *Dassault*, 263 F. App'x

22   at 606; *see also Chan Tse Ming v. Cordis Corp.*, 704 F. Supp. 217, 218 (S.D. Fla. 1989)

23   (recognizing that Florida has an interest in claims involving a product that was

24   manufactured in Florida).

25         Nevada is the home of both plaintiffs, Reno and American Medflight. Dkt. No. 1 at

26   9, ¶¶ 1-2. Nevada is also the site where the allegedly defective component was installed by

27   Reno. *Id.* at 10-11, ¶ 8. Nevada may have an interest in applying its law to products that

28   affect its individuals and businesses. *See Kawamura v. Boyd Gaming Corp.*, No. 13-cv-

203, 2014 WL 584760, at *5 (D. Nev. Feb. 12, 2014) ("Nevada has an interest in protecting its businesses"); *Liew v. Official Receiver & Liquidator (Hong Kong)*, 685 F.2d 1192, 1198 (9th Cir. 1982) (noting that a foreign jurisdiction "has a significant interest in regulating the business transactions that take place within its borders, particularly those that affect [its] individuals and businesses.").

California is the site where the damage occurred.  Dkt. No. 1 at 11, ¶ 9.  Thus, California has a legitimate interest in applying its law to this action in order to minimize plane crashes at its airports.  *See Dassault*, 263 F. App'x at 606.

Having found that Florida, Nevada, and California have a legitimate interest in applying their laws to this action, the Court moves to the third step of the analysis.

### 3.    Florida's Interest Would Be More Impaired if Its Law Were Not Applied.

The Court must now identify the law of the jurisdiction whose interest would be more impaired if its law were not applied.

Florida, the home state of Piper and the state where the product was manufactured, has a strong interest in applying its law here in order to limit Piper's liability for economic losses.  Thus, if Florida's law were not applied, Florida's interest in limiting Piper's liability would be impaired.

Florida's interest is greater than California's interest in minimizing plane crashes within its jurisdiction.  *See Dassault*, 263 F. App'x at 606 ("As the site of the accident, California has a legitimate, albeit limited, deterrence interest in applying its law to this action in order to minimize plane crashes at its airports.").  Despite plaintiffs' speculation that a personal injury could have resulted from the accident in question, Dkt. No. 28 at 16, the claims here are only for economic loss.  "Restricting product users to contract remedies where the only damage was economic harm to the product does not weaken the deterrence value of California's tort system."  *Dassault*, 263 F. App'x at 607.

Finally, as to Nevada, Reno contends that Nevada has no interest in applying its law in this case because a jurisdiction has "no interest in denying full recovery to its residents." Dkt. No. 28 at 13 (citing *Hurtado v. Superior Court*, 11 Cal. 3d 574, 581 (1974)).  The

facts in this case, however, are distinguishable from the facts in *Hurtado* because in addition to both plaintiffs being Nevada corporations, the landing gear was installed in Nevada, giving Nevada a possible interest in regulating the sale of products installed in Nevada.  Nonetheless, such interest, if any, is significantly less than Florida's interest.

The Court finds that Florida's interest would be more impaired than Nevada's or California's interests, if its law were not applied.  Thus, Florida law applies to this action.

### 4. Under Florida Law, Plaintiffs' Claims for Negligence and Strict Product Liability Are Barred.

Plaintiffs here claim only economic loss damages resulting from damage to the aircraft itself.  That damage was caused by a "left main landing gear assembly . . . and locking pin" installed as replacement parts on the aircraft, and the damage caused by those replacement parts was limited to the aircraft into which they were integrated.  Dkt. No. 1 at 10-11, ¶¶ 8, 9, 12.  Under Florida law, when a component part damages only the remainder of the product, no damage to "other property" occurred.  *See Turbomeca*, 913 So. 2d at 717.  Accordingly, the Court grants summary judgment for Piper with respect to plaintiffs' tort claims.

### B. Piper Is Entitled to Judgment as a Matter of Law as to Plaintiffs' Breach of Warranty Claims.

With plaintiffs' claims for negligence and strict product liability barred under the economic loss rule, plaintiffs' only remaining claims are for breach of implied and express warranties.  The Court agrees with Piper that these remaining claims also fail.

### 1. Plaintiffs' Claim for Breach of Implied Warranty Fails Because Plaintiffs Are Not in Privity with Piper.

As an initial matter, Piper claims that the Limited Warranty disclaims any implied warranty.  Dkt. No. 23 at 24, 46.  In order for an implied warranty to be properly disclaimed, however, the disclaimer must be in writing, must specifically mention the implied warranties of merchantability and fitness, and must be sufficiently conspicuous.  Fla. Stat. Ann. § 672.316.  Here, there is a dispute as to whether or not plaintiffs ever

1  received the Limited Warranty, and thus, the disclaimer.  *See* Dkt. No. 23 at 37, ¶ 9; Dkt.

2  No. 28-2 at 2, ¶ 2.  Therefore, summary judgment is not proper on this basis.

3      Piper also argues that under Florida law, in order for a plaintiff to recover damages

4  for breach of warranty, the plaintiff must be in privity with the defendant.  Dkt. No. 23 at

5  22.  "In order to recover for the breach of a warranty either express or implied, the plaintiff

6  must be in privity of contract with the defendant."  *Weiss v. Johnson*, 898 So. 2d 1009,

7  1012 (Fla. Dist. Ct. App. 2005); *see also Intergraph Corp. v. Stearman*, 555 So. 2d 1282,

8  1283 (Fla. Dist. Ct. App. 1990) ("Privity is required in order to recover damages from the

9  seller of a product for breach of express or implied warranties.").  "A plaintiff who

10  purchases a product, but does not buy it directly from the defendant, is not in privity with

11  that defendant."  *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995).

12      In response, plaintiffs argue that "Florida has followed the trend of most states in the

13  demise of the privity requirement for warranty claims."  Dkt. No. 28 at 22.  To support this

14  argument, plaintiffs cite to cases that predate *Kramer v. Piper Aircraft Corp.*, 520 So. 2d

15  37, 39-40 (Fla. 1988), where the Florida Supreme Court imposed the privity requirement

16  for breach of implied warranty claims.  As one court put it, "since 1988, Florida courts

17  have required privity between the manufacturer and the consumer of the product in order

18  for the consumer to assert an implied warranty claim."  *Baker v. Danek Med.*, 35 F. Supp.

19  2d 875, 878 (N.D. Fla. 1998).

20      Here, it is undisputed that plaintiffs purchased the parts from Columbia, rather than

21  from Piper directly.  Dkt. No. 1 at 10-11, ¶¶ 4, 8.  At oral argument, plaintiffs conceded that

22  they are not in privity with Piper.  Accordingly, plaintiffs' claim for breach of implied

23  warranty is barred as a matter of law.

24      While Florida law also requires privity for breach of express warranty claims, as

25  Piper acknowledges, its express Limited Warranty here extends to the end user of the

26  product.  Dkt. No. 23 at 23, 45.  Thus, the Court does not extend the privity requirement to

27  the express warranty in this case.

28  //

Case No. 13-cv-04346 NC
ORDER GRANTING PIPER'S MOTION          11
FOR SUMMARY JUDGMENT

1
2

**2.    Plaintiffs Provided No Evidence That They Complied With the Terms of Piper's Express Warranty.**

3    Piper contends that plaintiffs cannot recover for breach of the express Limited

4    Warranty because they failed to comply with its terms. Dkt. No. 23 at 26-27. "Under

5    [Florida] law, there can be no cause of action for breach of an express limited warranty

6    unless the consumer can allege and prove that the manufacturer did not comply with the

7    limited express warranty's terms." *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 324 (Fla.

8    Dist. Ct. App. 2008).  The Eleventh Circuit upheld a dismissal of a breach of express

9    warranty claim when the plaintiffs failed to allege "that they ever presented their vehicles

10    to a Ford dealership for repair or that the Ford dealership failed to make the repair," which

11    was required under the terms of the warranty. *Brisson v. Ford Motor Co.*, 349 F. App'x

12    433, 434 (11th Cir. 2009) (citing *Ocana*, 992 So. 2d at 324-25); *see also Burns v.

13    Winnebago Indus., Inc.*, No. 11-cv-354, 2012 WL 171088, at *3-4 (M.D. Fla. Jan. 20,

14    2012) (dismissing claim for breach of express warranty when plaintiff failed to comply

15    with its terms).

16    Here, Piper's Limited Warranty states that "in order to qualify under this limited

17    warranty, the owner must notify the Piper factory or an authorized Piper Service Center of

18    the defect within thirty (30) days of the discovery and promptly deliver the Part and

19    satisfactory proof of purchase to an authorized Piper Service Center or Parts Distributor."

20    Dkt. No. 23 at 45, ¶ 4.  Piper found no evidence in its own records that plaintiffs took any

21    such action. *Id.* at 37, ¶ 14.  Plaintiffs have presented no evidence that they complied with

22    this condition. *See* Dkt. No. 1.  In fact, plaintiffs do not address this argument in their

23    brief, except denying they ever received or saw the express Limited Warranty.  Dkt. No.

24    28-2 at 2, ¶ 2.

25    Additionally, Piper argues that the breach of express warranty claim is barred

26    because the defect that caused plaintiffs' damages manifested itself outside of the warranty

27    period.  Dkt. No. 23 at 25.  Piper's Limited Warranty states that it "shall extend for six (6)

28    months after purchase of the Part by the end user, not to exceed twenty-four (24) months

1   from Piper Factory ship date." *Id.* at 45, ¶ 2.  "As a general rule, a plaintiff may not bring a

2   claim for breach of an express warranty where a defect has not manifested during the

3   warranty period."  *Licul v. Volkswagen Grp. of America, Inc.*, No. 13-cv-61686, 2013 WL

4   6328734 at *2 (S.D. Fla. Dec. 5, 2013).

5          Here, it is undisputed that the parts in question were purchased by plaintiffs no later

6   than April 15, 2008.  Dkt. No. 1 at 10-11, ¶ 8.  The parts failed on May 6, 2011.  *Id.* at 11, ¶

7   9.  Because the time elapsed was greater than twenty-four months from Piper Factory ship

8   date, and greater than six months from purchase of the parts by the end user, the express

9   warranty expired before plaintiffs' damages took place.  Plaintiffs again fail to address this

10  argument in their opposition, except denying they ever received or saw the express Limited

11  Warranty.  Dkt. No. 28-2 at 2, ¶ 2.  Plaintiffs cannot sue Piper for breach of the Limited

12  Warranty, while maintaining that they are not bound by the terms of that warranty.

13  Accordingly, plaintiffs' express warranty claim fails because plaintiffs did not comply with

14  its terms.[2]

15                          **IV. CONCLUSION**

16         The Court finds that Piper is entitled to judgment as a matter of law on all of

17  plaintiffs' claims.  Accordingly, Piper's motion for summary judgment is GRANTED.

18         IT IS SO ORDERED.

19      Date: November 21, 2014                    _____

20                                                 Nathanael M. Cousins
                                                   United States Magistrate Judge

21

22

23

24

25

26  _____

27  [2] Piper also argues that under Nevada and California law, plaintiffs' breach of warranty claims are
    barred by the statute of limitations.  Dkt. No. 23 at 27, 29.  However, given the Court's
    determination that Florida law applies to this action, the Court will not address the statute of
28  limitations argument.